**ST. CLAIR AREA SCHOOL DISTRICT BOARD OF EDUCATION**

v.

**E.I. ASSOCIATES, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 7, 1998.

Decided June 29, 1999.

Thomas J. Nickels, Pottsville, for petitioner.

James J. Riley, Pottsville, for respondent.

Before DOYLE, J., FRIEDMAN, J., and RODGERS, Senior Judge.

DOYLE, Judge.

Before this Court are the consolidated appeals of E.I. Associates (Contractor) from two orders of the Court of Common Pleas of Schuylkill County. In the first appeal, at No. 1727 C.D.1998, the Contractor challenges an order denying its motion for judgment of non pros. In the second appeal, at No. 1753 C.D.1998, the Contractor challenges an order denying its petition to compel arbitration.

On June 23, 1983, the St. Clair Area School District Board of Education (District) hired the Contractor as its architect to design a new school. The parties entered into a contract, which provided that the Contractor would be paid 6% of the construction costs of the school. The contract amount was to be payable, in varying proportions, through five discrete phases of the building project: (1) the design phase; (2) the design development phase; (3) the construction document phase; (4) the bidding phase; and (5) the construc-

tion phase. The Contractor quickly completed the work for the first two phases of the project, and its work on the third phase was in progress as of March of 1984.

In May of 1984, the Department of Education notified the District that the Contractor failed to obtain an evaluation of the land where the school was to be built from the Department of Environmental Resources (DER). This evaluation is mandated by Section 741 of the Public School Code of 1949,[1] 24 P.S. § 7–741, which provides:

> Any school district ... planning to construct ... a school building located in an area certified ... to be subject to mine subsidence, shall, before beginning design, obtain an evaluation of the substrata of the land upon which it will be situate from [DER].

Thereafter, DER evaluated the land and discovered that there was a risk of mine subsidence. On August 6, 1985, DER disapproved of the site, effectively terminating the construction project. At the time of DER's disapproval, the District had paid the Contractor $220,736.31 for work performed on the project.

On May 9, 1986, the District initiated an action against the Contractor by filing a praecipe for writ of summons in the Court of Common Pleas of Schuylkill County. Although the parties thereafter engaged in settlement negotiations and some discovery, the District did not file a complaint against the Contractor until March 25, 1994, approximately eight years after the District initiated this litigation.[2]

On April 25, 1994, the Contractor filed a motion to dismiss the suit and for the entry of a judgment non pros. In essence, the Contractor argued that so much time had passed since the events leading up to this suit had occurred, its ability to prepare a defense was seriously impaired. In its answer to the motion, the District stated that the Contractor had substantially delayed the progress of the case and that the Contractor was not prejudiced by the delay in filing the complaint. Most important, the District argued that, under the doctrine of *nullum tempus occurrit regi,* its case could not be dismissed merely because of the passage of time.

The Common Pleas Court denied the motion for non pros on March 11, 1997. The court applied the doctrine of *nullum tempus* and held that, under that doctrine, the District's complaint could not be dismissed for the delay in prosecuting its claim. Common Pleas declined to follow the Supreme Court's decision in *Penn Piping v. Insurance Company of North America,* 529 Pa. 350, 603 A.2d 1006 (1992)[3] (which held that a defendant is presumed to have suffered prejudice when there is a lack of docket activity for two years), holding that *Penn Piping* was inapplicable because the District was a political subdivision of the Commonwealth and was entitled to invoke the doctrine of *nullum tempus.*

On March 11, 1997, the same day the non pros motion was denied, the Common Pleas Court entered an order directing all parties to complete discovery before June 11, 1997, and scheduled a trial for June 23, 1997.

The Contractor then filed a petition with Common Pleas to amend the March 11th interlocutory order to include language certifying that the issue involved a controlling question of law as to which there was substantial grounds for difference of opinion and that an immediate appeal would materially advance the ultimate termination of the case. On April 6, 1997, the Court reaffirmed its decision to deny the motion for non pros but did certify its order for immediate appeal under 42 Pa.

---

1. Act of March 10, 1949, P.L. 30, *as amended.*

2. The record indicates that the Contractor never filed an answer to the complaint.

3. Overruled by *Jacobs v. Halloran,* 551 Pa. 350, 710 A.2d 1098 (1998).

C.S. § 702. A petition for permission to appeal was filed with the Superior Court, which our sister court granted on July 18, 1997.

In May of 1997, the Contractor filed preliminary objections to the complaint in the form of a motion to strike and motion for a more specific pleading which were dismissed by Common Pleas on July 24, 1997, as being untimely.

On June 6, 1997, the Contractor filed a motion to compel arbitration of this dispute pursuant to Paragraph 9.1 of the contract executed by the parties, which provided that all disputes arising from the agreement were to be decided by arbitration. The District, in its answer to this motion, asserted that it was prejudiced because the Contractor had waited for 10 years to raise the arbitration issue. The District's argument relied on *Goral v. Fox Ridge, Inc.*, 453 Pa.Super. 316, 683 A.2d 931 (1996), which held that a party waives arbitration by failing to raise the issue in a timely manner.

■ On July 16, 1997, the Common Pleas Court denied the motion to compel arbitration based on *Goral*. The Contractor then filed a notice of appeal with the Superior Court.[4]

In June of 1997, the parties were ready to try this case on the merits in Schuylkill County and the case was placed at the head of the Common Pleas Court's June trial list. According to the District, the trial was adjourned, at the request of the Contractor, for personal reasons. (District's brief at 18.)

The Superior Court, thereafter, transferred both appeals to this Court, and we consolidated the cases for argument.

On appeal, the Contractor argues that the Common Pleas Court erred in applying the doctrine of *nullum tempus*, because this doctrine applies to statutes of limitations and is not properly applied to a situa-

tion involving an application for a judgment of non-pros. Also, because *Penn Piping* has now been overruled, this matter should be remanded to the Common Pleas Court to reconsider the non pros in light of *Jacobs*. The Contractor further appealed the issue of whether the Common Pleas Court erred in denying its motion to compel arbitration, because the District was not prejudiced by any delay, and the Contractor is not given any advantage if the arbitration clause is enforced.

Previously, the standard for granting a judgment of non pros was as follows:

[I]n cases involving a delay for a period of two years or more, the delay will be presumed prejudicial for purposes of any proceeding to dismiss for lack of activity on the docket. Thus, if there is a lack of due diligence in failing to proceed with reasonable promptitude; if there is no compelling reason for the delay; and if the delay is for two years or more, the case may be dismissed for lack of activity on the docket.

*Penn Piping*, 529 Pa. at 356, 603 A.2d at 1009. However, in *Jacobs*, the Supreme Court overruled *Penn Piping* and replaced that test with the following standard:

To dismiss a case for inactivity ... there must first be a lack of due diligence on the part of the plaintiff in failing to proceed with reasonable promptitude. Second, the plaintiff must have no compelling reason for the delay. Finally, the delay must cause *actual* prejudice to the defendant.

*Jacobs*, 551 Pa. at 358–359, 710 A.2d at 1103 (emphasis in the original) (citing *James Brothers Lumber Co. v. Union Banking and Trust Co.*, 432 Pa. 129, 247 A.2d 587 (1968)).

■ The Contractor first contends that the Common Pleas Court erred in denying its petition for judgment of non pros on the theory of *nullum tempus*. *Nullum tempus* literally means that "time

---

**4.** An order denying a petition to compel arbitration, although interlocutory, may be appealed as of right under Pa. R.A.P. 311(a)(8). *Goral*.

does not run against the king." *Smith v. Mognet,* 152 Pa.Cmwlth. 302, 618 A.2d 1215 (1992). Under that doctrine, statutes of limitation do not apply to the Commonwealth unless a statute specifically provides that they do. *Id.* A school district is a political subdivision of the Commonwealth and is entitled to assert the doctrine of *nullum tempus,* so long as the school district is seeking to enforce a public right imposed by law. *Duquesne Light v. Woodland Hills School District,* 700 A.2d 1038 (Pa.Cmwlth.1997), *petition for allowance of appeal denied,* 555 Pa. 722, 724 A.2d 936 (1998).

 A grant of a judgment of non pros, however, is based on the equitable principle of laches and not upon a statute of limitations. *Jacobs.* Laches applies when a defendant is so prejudiced by the passage of time and inexcusable delay that it would be unjust to allow the plaintiff to assert a claim. *Id.* Although statutes of limitation do not apply to the Commonwealth, **laches may be imputed to the Commonwealth and its municipalities, as well as to an individual.** *Weinberg v. State Board of Examiners of Public Accountants,* 509 Pa. 143, 501 A.2d 239 (1985); *Stahl v. First Pennsylvania Banking and Trust Co.,* 411 Pa. 121, 191 A.2d 386 (1963). In *Commonwealth ex rel. Hensel v. Philadelphia B. & B.M. Turnpike Co.,* 153 Pa. 47, 25 A. 1105 (1893), Chief Justice Paxson explained:

> Were the complainant here a private individual we would not hesitate to say that his laches was a bar to this proceeding. Is the commonwealth in any better position? We think not. It is true, the statute of limitations does not run against the commonwealth. But this is not a question of the statute of limitations. It is a question of laches and

laches may be imputed to the commonwealth as well as to an individual.

*Id.* at 53, 25 A. at 1106 (emphasis added).

 In light of the above, the Contractor's argument that *nullum tempus* cannot be asserted in a non pros proceeding has merit. *Jacobs, Weinberg, Stahl* and *Hensel* reveal these principles: (1) non pros is based on the theory of laches, (2) laches may be imputed to the Commonwealth and its municipalities, and (3) laches is distinct from statutes of limitations which do not apply to the Commonwealth. Hence, we hold that the District may not defend against a judgment of non pros by asserting the doctrine of *nullum tempus,* and, for that reason, the Common Pleas Court erred in denying the Contractor's non pros motion.

 However, our holding that the District may not assert the doctrine of *nullum tempus* in this matter does not end our inquiry. To impute laches against the Commonwealth, a stronger case of delay or acquiescence is necessary than when a mere private right is involved, *Stahl,* and laches is only imputed to the Commonwealth in rare cases. *Breisch v. Locust Mountain Coal Co.,* 267 Pa. 546, 110 A. 242 (1920). The Supreme Court reaffirmed this principle in *Weinberg,* where it stated:

> We have also recognized the availability of the defense [of laches] against the Commonwealth and other governmental units in numerous cases and in a variety of situations, **although the courts will be generally reluctant to apply the doctrine against the government and will require a stronger showing by a defendant who attempts to apply the doctrine against the Commonwealth than by one who would apply it against an individual.**

*Weinberg,* 509 Pa. at 150, 501 A.2d at 243 (emphasis added).[5] In addition, we have

---

5. An example of the type of case where laches barred an action by the government is *Stahl.* In that case, the attorney general filed a petition in 1961 to recover interest and profits earned by a bank between 1900 and 1933;

the Supreme Court held that laches ran against the Commonwealth because the enormous delay would very greatly prejudice the defendants. Likewise, in *City of Bradford v. New York & Pennsylvania Telephone & Tele-*

held that laches may not be raised as a defense in situations where the Commonwealth is attempting to enforce duties and obligations under its police power. *Clearview Land Development Co. v. Commonwealth*, 15 Pa.Cmwlth. 303, 327 A.2d 202 (1974).

Combining the test in *Jacobs* with the law of imputing laches to the government, we conclude as follows: In cases where the Commonwealth or a municipal government is the plaintiff, to dismiss a matter for lack of docket activity the defendant must show (1) a higher degree of prejudice than is normally required under the third prong of the test articulated in *Jacobs*, and (2) that the case is not one where the Commonwealth is seeking to enforce its duties and obligations under its police power.

Because a common pleas court must always resolve the question of whether a party has suffered actual prejudice by a plaintiff's delay in prosecuting a case, a remand is required here. *Jacobs*. Therefore, we vacate the order of the Common Pleas Court denying the Contractor's motion for non pros and remand this case to the Court to reconsider that motion, applying the standard set forth in this opinion.

Next, the Contractor contends that the Common Pleas Court erred in denying its motion to compel arbitration. At oral argument, however, the Contractor conceded that this matter belongs before the Common Pleas Court and not before an arbitrator. Therefore, we need not consider this issue.[6]

Accordingly, the order of the Common Pleas Court denying the Contractor's non pros motion is vacated, and this case is remanded for reconsideration of that issue. The order denying the motion to compel arbitration is affirmed.

### · *O R D E R*

NOW, June 29, 1999, the order of the Court of Common Pleas of Schuylkill County at issue in the appeal at No. 1727 C.D.1998 is vacated, and the case is remanded for proceedings consistent with the attached opinion. The Common Pleas Court's order at issue in the appeal at No. 1753 C.D.1998 is hereby affirmed.

Jurisdiction relinquished.

---

graph Co., 206 Pa. 582, 56 A. 41 (1903), the High Court determined that, where the City petitioned to remove telephone poles and wires, valued at more than $100,000, from streets that they occupied for more than 21 years without objection, laches could be imputed to the City.

6. Even if the Contractor had not conceded this issue, we would have affirmed the subject order of the Common Pleas Court. A party engaged in litigation before a court may waive its right to have a dispute submitted to arbitration. *Goral*. The key to determining whether arbitration has been waived is whether the party, by virtue of its conduct, has accepted the judicial process. *Moscatiello Construction Co. v. Pittsburgh Water and Sewer Authority*, 167 Pa.Cmwlth. 508, 648 A.2d 1249 (1994), *petition for allowance of appeal denied*, 540 Pa. 608, 655 A.2d 995 (1995). Acceptance of the judicial process is demonstrated when the party (1) fails to raise the issue of arbitration promptly, (2) engages in discovery, (3) files pretrial motions which do not raise the issue of arbitration, (4) waits

for adverse rulings on pretrial motions before asserting arbitration, or (5) waits until the case is ready for trial before asserting arbitration. *Goral*; *Moscatiello*.

Here, on June 6, 1997, approximately three years after the District's complaint was filed, the Contractor first raised the issue of submitting this case arbitration. The record shows that, subsequent to the filing of the District's complaint, the Contractor presented and litigated its motion to dismiss and its preliminary objections, yet never raised the issue of arbitration in those motions. Moreover, the Contractor filed its petition for arbitration only a few weeks before the trial was to take place. And, at that time, the parties were ready to try the case on the merits. In light of the above, it is plain that the Contractor, through its conduct, accepted the judicial process and waived the right to arbitrate this case. Therefore, the Common Pleas Court properly denied the Contractor's petition to compel arbitration.