MAXATAWNY TOWNSHIP and Maxatawny Township Municipal Authority, Appellants

v.

KUTZTOWN BOROUGH and Kutztown Municipal Authority.

Kutztown Borough and Kutztown Municipal Authority

v.

Maxatawny Township and Maxatawny Township Municipal Authority.

Maxatawny Township and Maxatawny Township Municipal Authority, Appellants

v.

Kutztown Borough and Kutztown Municipal Authority.

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 2014.
Decided April 10, 2015.
Reargument En Banc Denied
May 21, 2015.

Jill E. Nagy and Sean E. Summers, York, for appellants.

George C. Werner, Jr., Lancaster, for appellees.

BEFORE: DAN PELLEGRINI, President Judge, and P. KEVIN BROBSON, Judge [1], and JAMES GARDNER COLINS, Senior Judge.

1. This case was reassigned to the authoring judge on February 10, 2015.

OPINION BY Judge P. KEVIN BROBSON.

Maxatawny Township and Maxatawny Township Municipal Authority (collectively, Maxatawny) appeal from two orders of the Court of Common Pleas of Berks County (trial court). The first order overruled Maxatawny's preliminary objections to the counterclaim of Kutztown Borough and Kutztown Municipal Authority (collectively, Kutztown). The second order stayed an arbitration initiated by Kutztown pending our disposition of the issues on appeal arising out of the first order. For the reasons that follow, although we find no error in the trial court's decision to stay the arbitration, we reverse the trial court's order overruling Maxatawny's preliminary objections.

## I. BACKGROUND

The following facts are not in dispute. Maxatawny and Kutztown entered into an Inter-municipal Sanitary Sewage Service and Treatment Agreement (Agreement) pursuant to which they agreed to cooperate in creating an inter-municipal sewage treatment authority and in constructing a treatment facility to provide for their future sewage needs. The Agreement obligated Maxatawny to construct the treatment facility and to convey it to the new treatment authority by December 31, 2013.

On October 25, 2012, Maxatawny informed Kutztown that it could not comply with certain duties under the Agreement and that it intended to dissolve the Agreement. By letter to Kutztown dated November 30, 2012, Maxatawny confirmed its position, stating that it intended to withdraw from the Agreement and proposing general settlement terms. Over a year later, on December 10, 2013, Kutztown rejected Maxatawny's proposal, demanded compliance with the Agreement as written, and stated its intention· to "enforce all of [the Agreement's] rights and remedies, at law, in equity and pursuant to other causes of action, to compel performance of the Agreements." (Reproduced Record (R.R.) at 47a.)

Maxatawny initiated this declaratory judgment action on or about December 27, 2013, shortly after it learned that Kutztown intended to seek enforcement of the agreement. Importantly, Maxatawny's Declaratory Judgment Complaint *does not* seek relief based on the parties' disagreement over whether Maxatawny can perform under the terms of the Agreement— *i.e.*, the merits of the parties' dispute. Instead, Maxatawny seeks declaratory relief in the nature of enforcing the dispute resolution provisions of the Agreement. Specifically, Article XI, Section 11.02 of the Agreement provides:

> Arbitration shall be demanded within ninety (90) calendar days from the time when the demanding party ... knows or should have known of the event or events giving rise to the claim. *Failure to demand arbitration within this time limit shall forever foreclose the right of the demanding party to review its alleged claim.*

(Agreement art. XI, § 11.02 (emphasis added).) Maxatawny alleges that because Kutztown failed to demand arbitration within ninety (90) days of learning in late 2012 that Maxatawny intended to withdraw from the agreement, Kutztown was now contractually barred from contesting that withdrawal. The single count Declaratory Judgment Complaint provides, in relevant part:

> 29. There is now existing an actual justiciable controversy concerning whether all rights to arbitration or moving forward with any of the provisions of the Agreement have been waived because the facts, circumstances, conditions set forth above constitute a waiver,

based upon the actual and express contract terms.

30. On October 25, 2012 and in writing on November 25, 2012, [Maxatawny] gave notice to [Kutztown] that [Maxatawny] terminated the Agreement.

31. The Kutztown Parties have waived their rights to arbitration based upon the plain and unambiguous language in the contract and any claims are barred, as a matter of law.

32. The mandate for arbitration is express and not implied within said Agreement.

. . .

34. Notwithstanding the foregoing, [Kutztown has] asserted that the contract is viable and the parties should move forward with the requirements of the Agreement and escrow arrangements.

35. [Maxatawny seeks] a declaration from this Court concerning the respective rights of the parties under the Agreement, a determination whether the Agreement has been terminated as of the notice provided in 2012 and that [Maxatawny has] no liability to [Kutztown].

(R.R. 9a).

In response, Kutztown filed an answer with new matter and a counterclaim against Maxatawny, Maxatawny Township's supervisors, and Maxatawny Township Municipal Authority's members, seeking a writ of mandamus under Section 2315 of the General Local Government Code, 53 Pa.C.S. § 2315,[2] to direct Maxatawny to perform its obligations under the Agreement. Kutztown also asserted a claim for specific performance and, in the alternative, for monetary damages stemming from Maxatawny's alleged breach of the Agreement. Kutztown alleged that notwithstanding the Agreement's arbitration clause, Maxatawny assented to the trial court's jurisdiction by filing its Declaratory Judgment Complaint there, and thus Kutztown could proceed with its counterclaims in that forum. Kutztown did not seek to compel arbitration.

Maxatawny filed preliminary objections to the counterclaim, contending that the trial court lacked jurisdiction over the dispute raised in the counterclaims because Kutztown had an adequate remedy at law insofar as the Agreement provided for mandatory arbitration. In the preliminary objections, Maxatawny noted specifically that it had commenced its declaratory judgment action for the purpose of seeking a ruling that Kutztown was required to bring a challenge to Maxatawny's withdrawal from the Agreement within 90 days of the date it knew or should have known of a dispute. (R.R. 150a.) It did not commence the action concerning the merits of that withdrawal—*i.e.*, the substantive merits of the parties' dispute. (R.R. 151a.) In its jurisdictional preliminary objection, Maxatawny contended that it initiated the declaratory judgment action because of a threat by Kutztown to bring a time-barred claim. (R.R. 152a.) It claimed that Kutztown agreed to arbitrate the merits dispute between the parties, but Kutztown failed to bring that claim in arbitration within the 90 days provided in the Agree-

---

**2.** Section 2315 of the General Local Government Code, regarding the effect of joint cooperation agreements, provides:

Any joint cooperation agreement shall be deemed in force as to any local government when the agreement has been adopted by ordinance by all cooperating local govern- ments. After adoption by all cooperating local governments, the agreement shall be binding upon the local government, and its covenants may be enforced by appropriate remedy by any one or more of the local governments against any other local government which is a party to the agreement.

ment. In essence, Maxatawny argued that the trial court lacks subject matter jurisdiction because of the parties' agreement to arbitrate, notwithstanding Kutztown's alleged failure to commence timely arbitration. (R.R. 152a–53a.) Maxatawny further challenged joinder of the individual supervisors and members.[3] By order dated March 10, 2014 (Preliminary Objection Order), the trial court overruled the preliminary objections in principal part, refusing to dismiss the counterclaim for lack of jurisdiction but sustaining the preliminary objections with regard to the individual defendants.

██ Maxatawny appealed the Preliminary Objection Order,[4] after which Kutztown filed a "precautionary" demand for arbitration. Subsequently, Kutztown requested a stay of the arbitration, contending that the arbitration should be held in abeyance pending disposition of Maxatawny's appeal of the Preliminary Objection Order. Two days later, without response from Maxatawny, the trial court granted Kutztown's request and stayed the arbitration (Stay Order). Maxatawny also appeals the Stay Order.[5]

After Maxatawny filed a concise statement of errors complained of on appeal, the trial court issued an opinion in support of its Preliminary Objection Order. The trial court found that both parties failed to demand arbitration timely under the Agreement and, therefore, waived their rights to arbitration. Specifically, it held that Maxatawny failed to demand arbitration within ninety days of the date on which it determined that it could not perform under the Agreement (in or around October 2012) and that Kutztown failed to demand arbitration within ninety days of receiving Maxatawny's settlement offer (in November 2012), which should have put Kutztown on notice of a potential claim. The trial court further considered the Declaratory Judgment Action as seeking a declaration that the Agreement has been terminated. Because Maxatawny availed itself of the judicial process to seek that relief, the trial court held that Maxatawny waived any right to compel arbitration of Kutztown's counterclaim.

The trial court issued a separate opinion in support of its Stay Order. The trial court held that Section 7304(b) of the Uniform Arbitration Act, 42 Pa.C.S. § 7304(b),[6] does not apply when the par-

---

3. Kutztown also filed a motion for preliminary injunction, seeking an order enjoining Maxatawny from finalizing or further proceeding in agreements regarding committal of sewage flow into the treatment facility. In preparation for a hearing on its preliminary injunction, Kutztown filed a motion for expedited discovery, followed by a motion to compel Maxatawny to respond to its discovery requests, both of which the trial court granted.

4. While a decision overruling preliminary objections "is ordinarily an interlocutory order not subject to immediate appeal," *Hazleton Area Sch. Dist. v. Bosak*, 671 A.2d 277, 281 n. 8 (Pa.Cmwlth.1996), when the objections seek to compel compliance with a contractual arbitration clause, the order is appealable as of right. 42 Pa.C.S. § 7320; Pa. R.A.P. 311(a)(8).

5. By order dated July 14, 2014, this Court *sua sponte* consolidated the appeals in this matter.

6. Regarding stays of arbitration, Section 7304(b) of the Uniform Arbitration Act provides:

On application of a party to a court to stay an arbitration proceeding threatened or commenced the court may stay an arbitration on a showing that there is no agreement to arbitrate. When in substantial and bona fide dispute, such an issue shall be forthwith and summarily tried and determined and a stay of the arbitration proceedings shall be ordered if the court finds for the moving party. If the court finds for the opposing party, the court shall order the parties to proceed with arbitration.

ties have waived their agreement to arbitrate. The trial court held that it acted appropriately and within its discretion in staying the arbitration pending this Court's review of its waiver ruling. Finally, the trial-court held that it did not abuse its discretion in ruling on Kutztown's request for a stay before Maxatawny filed its response to the motion. The trial court reasoned that it already had the benefit of Maxatawny's preliminary objections to Kutztown's counterclaim and that any answer filed by Maxatawny would have been redundant of the position that Maxatawny had set forth in the preliminary objections.

## II. DISCUSSION

### A. Appeal of Preliminary Objection Order[7]

 Maxatawny contends that the trial court erred in overruling its preliminary objections to Kutztown's counterclaim seeking to enforce the parties' agreement to arbitrate in Article XI, Section 11.02 of the Agreement. It argues that there is no dispute that the subject matter of Kutztown's counterclaim falls within the scope of the parties' agreement to arbitrate. The error, Maxatawny argues, was the trial court's holding that Maxatawny waived, by its conduct, enforcement of the

parties' agreement to arbitrate. Kutztown argues that Maxatawny is attempting to have it both ways—i.e., to avoid arbitrating the claim in its declaratory judgment action while forcing Kutztown to abide by the parties' agreement to arbitrate. It insists that both parties, through their conduct, have agreed to have the trial court resolve the entirety of their dispute.

 "The Commonwealth favors the settlement of disputes by arbitration to promote the swift and orderly disposition of those claims." *McCarl's Inc. v. Beaver Falls Mun. Auth.*, 847 A.2d 180, 184 (Pa. Cmwlth.2004). Nonetheless, a party may waive the right to enforce an agreement to arbitrate either expressly or by waiver inferred from the party's conduct if that conduct is so inconsistent with the purpose of the contract arbitration provision that it leaves no opportunity for a reasonable inference to the contrary. *Goral v. Fox Ridge, Inc.*, 453 Pa.Super. 316, 683 A.2d 931, 933 (1996). Because of the overwhelming public policy in favor of arbitration, however, waiver will not be lightly inferred. *Id.* This creates a particularly high hurdle for those, like Kutztown, that advocate waiver.[8]

In *Goral*, a couple filed suit in the court of common pleas against the builder of

7. In reviewing a trial court's disposition of preliminary objections, we are limited to determining whether the trial court violated constitutional rights, committed an error of law, or abused its discretion. *See Hazleton Area Sch. Dist.*, 671 A.2d at 281. Preliminary objections "should be sustained only in cases that are clear and free from doubt. The test is whether it is clear from all of the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his or her right to relief." *Id.* (internal citations omitted).

8. *See, e.g., Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("[A]s a matter of federal law, any doubts concerning

the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."); *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir.2004) ("There is a strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitrate has been waived bears a heavy burden."); *Dean v. Heritage Healthcare of Ridgeway, LLC*, 408 S.C. 371, 759 S.E.2d 727, 736 (2014); *Verbeek Props., LLC v. GreenCo Envtl., Inc.*, 159 Wash.App. 82, 246 P.3d 205, 207 (2010); *Perry Homes v. Cull*, 258 S.W.3d 580, 589–90 (Tex.2008).

their home, seeking to recover damages for defects in their home's foundation. The agreement of sale between the couple and the builder included an agreement to arbitrate "[a]ny controversy or claim arising out of or relating to this contract." *Id.* at 932. The builder filed an answer with new matter, asserting various defenses, including the statute of limitations. In the alternative, the builder also contended that any claims that were not barred by the statute of limitations were subject to the parties' agreement to arbitrate. As relief, the builder sought a judgment in its favor and dismissal of the couple's claims or, in the alternative, a stay pending submission of any claims not barred by the statute of limitations to common law arbitration. The couple filed a reply to the new matter. Approximately ten months later, the couple served discovery requests on the builder. The builder, however, refused to respond, arguing that the couple's claims were subject to arbitration and were barred by the applicable statute of limitations. The couple filed a motion to compel with the common pleas court, which granted the motion. But instead of complying with the trial court's order, the builder filed a motion to compel arbitration. In the approximately nineteen months since the couple filed their complaint, this was the first time the builder sought to compel arbitration. The common pleas court denied the motion.

On appeal, the Pennsylvania Superior Court affirmed. The court rejected the builder's contention that it timely and consistently asserted the parties' agreement to arbitrate. It viewed the builder's references to the arbitration clause in its new matter only "as an alternative to [its] preferred option of winning a favorable ruling from the trial court" on its other affirmative defenses, particularly its defense of the statute of limitations. *Id.* at 933. The Superior Court reasoned that because the

parties' substantive dispute fell within the parties' arbitration agreement, the builder could not pick and choose which defenses it wished to litigate in the trial court while reserving its right to arbitrate others: "Where the underlying dispute is arbitrable, the applicability of a statute of limitations is also." *Id.* at 934. The court noted that if the builder "truly wanted" to head off litigation, it would have filed preliminary objections to force arbitration. Instead, it waited nineteen months after the complaint was filed and after it lost a ruling on a discovery dispute to seek to compel arbitration. *Id.* For these reasons, the Superior Court ruled that the builder waived its right to enforce the parties' arbitration agreement.

■ To infer waiver, we must determine whether the party seeking to enforce arbitration has "accepted the judicial process" *in lieu* of arbitration. *St. Clair Area Sch. Dist. Bd. of Educ. v. E.I. Assocs.*, 733 A.2d 677, 682 n. 6 (Pa.Cmwlth.1999) (*St. Clair S.D.*). In *St. Clair S.D.*, we opined:

> Acceptance of the judicial process is demonstrated when the party (1) fails to raise the issue of arbitration promptly, (2) engages in discovery, (3) files pretrial motions which do not raise the issue of arbitration, (4) waits for adverse rulings on pretrial motions before asserting arbitration, or (5) waits until the case is ready for trial before asserting arbitration.

*Id.* In that case, a school district initiated a lawsuit by writ of summons in the common pleas court against a contractor. For approximately eight years, the parties engaged in limited discovery and settlement negotiations. The school district then filed a complaint. The contractor filed a motion to dismiss, alleging that the school district had waited too long to prosecute its claim. That motion was denied. The contractor

also filed preliminary objections, which the trial court denied. Approximately eleven years after the school district initiated the lawsuit, three years after the school district filed its complaint, and a few weeks before the scheduled trial, the contractor sought to compel arbitration of the school district's claim under the terms of the parties' written agreement. The trial court denied the motion, and this Court, looking at the factors outlined above, affirmed. *Id.*

In *O'Donnell v. Hovnanian Enterprises, Inc.*, 29 A.3d 1183 (Pa.Super.2011), the Pennsylvania Superior Court cited favorably our decision in *St. Clair S.D.*, particularly our five-factor test. In that case, condominium unit purchasers (Unit Purchasers) initiated a suit in 2007 in common pleas court against the developer of a condominium project in Philadelphia. The developer filed preliminary objections, but it did not raise the issue of binding arbitration. The Unit Purchasers filed an amended complaint. Developer again filed preliminary objections that did not raise the issue of arbitration. The trial court sustained in part and overruled in part the preliminary objections, dismissing one of the counts in the Unit Purchasers' complaint. The parties then entered into a tolling agreement to pursue settlement negotiations, and the Unit Purchasers discontinued their lawsuit without prejudice.

When those negotiations failed, the Unit Purchasers reinstituted their lawsuit in 2010, *sans* the count that the common pleas court dismissed in the first round of litigation. The developer again filed preliminary objections, but this time it included in its preliminary objections a claim that the parties' dispute was subject to binding arbitration. The Unit Purchasers filed an amended complaint, setting forth the procedural history from the 2007 litigation, and the developer again filed pre-

liminary objections, raising the issue of arbitration. The common pleas court sustained the preliminary objections and transferred the matter to binding arbitration. The common pleas court found that the developer had not waived its right to compel arbitration, holding that the scope of the inquiry was confined to the developer's conduct in the present litigation (2010) and not what occurred in the prior litigation in 2007.

On appeal, the Superior Court held that the allegations in the amended complaint in 2010 "describe a continuum of litigation that [the developer] participated in and benefitted from" and that the developer did not dispute these facts. *O'Donnell,* 29 A.3d at 1188. The Superior Court held that the developer unquestionably availed itself of the judicial process in 2007 by filing preliminary objections, but it failed to raise the arbitration provision at that time. It was not until the Unit Purchasers reinstated their lawsuit after failed settlement negotiations that the developer invoked the parties' agreement to arbitrate. By this time, however, the developer had gained the undue advantage of a court decision, dismissing one of the Unit Purchasers' claims to the prejudice of the Unit Purchasers. In that intervening three-year period, the developer never raised the issue of arbitration. *Id.* at 1189. The Superior Court, therefore, held that the developer had waived its right to enforce the arbitration provisions by purposefully availing itself of the judicial process for its own advantage and to the prejudice of the Unit Purchasers and reversed the common pleas court.

Typically, it is the defendant that seeks to compel arbitration of a dispute initiated in a court. Here, it is the plaintiff. The Pennsylvania Superior Court has encountered this situation. In *Keystone Technology Group, Inc. v. Kerr Group, Inc.*, 824

A.2d 1223 (Pa.Super.2003), Keystone Technology Group, Inc. (Keystone) initiated a civil action in equity, seeking specific performance of a contract. Less than two months later, Keystone filed its first motion to compel arbitration in the case. As the defendant attempted to press forward with the litigation, Keystone continued to seek a court order compelling the parties to proceed to arbitration of the dispute. The trial court refused those requests, and Keystone appealed to the Superior Court.

Addressing the question of whether Keystone waived any right to compel arbitration, the Superior Court, citing its decision in *Kwalick v. Bosacco*, 329 Pa.Super. 235, 478 A.2d 50 (1984), held that the mere filing of a complaint or an answer in a court proceeding will not result in waiver of the right to compel arbitration. *Keystone Tech.*, 824 A.2d at 1226. The party asserting waiver must show prejudice to it or undue advantage gained by the other party to be successful on the waiver argument. *Id.* The Superior Court observed that Keystone moved to compel arbitration within six weeks of filing its complaint, no discovery had taken place in the interim, and that the defendant did not contend that it suffered any prejudice or that Keystone gained any unfair advantage. *Id.* at 1227. Accordingly, the Superior Court held that Keystone did not waive its right to compel arbitration by initiating litigation in the common pleas court. *Id.*

■ We now turn to Maxatawny's conduct in this case to determine whether it acted so inconsistent with the purpose of the arbitration provision in the parties' Agreement that we should infer that Max-

atawny waived the right to enforce that provision through its preliminary objections to Kutztown's counterclaim. We are aided in our analysis by the five *St. Clair S.D.* factors. The first, fourth, and fifth factors all relate to when the party against whom waiver is asserted first raised the issue of arbitration. Under the first factor, we consider whether Maxatawny raised the issue of arbitration promptly. Under the fourth, we consider whether Maxatawny waited for an adverse ruling on pretrial motions before asserting arbitration. Under the fifth factor we consider whether Maxatawny waited until the case was ready for trial before asserting arbitration. Consideration of these three factors weighs against waiver in this case.

In its Declaratory Judgment Complaint, Maxatawny asks the trial court to declare that Kutztown failed to make a timely demand for arbitration under the terms of the parties' agreement and thus waived any right to contest Maxatawny's withdrawal from the agreement in 2012. As the arbitration clause provides: "Failure to demand arbitration within this time limit shall forever foreclose the right of the demanding party to review its alleged claim." (Agreement art. XVI, § 11.02.) In essence, Maxatawny asks the trial court to enforce the 90–day contract of limitation period in the Agreement. *See* 42 Pa.C.S. § 5501(a) (providing that parties may contract for shorter period of time to bring claim than provided by statute that is not "manifestly unreasonable").[9] Whether Maxatawny should have waited for Kutztown to file a formal demand for arbitration to assert this timeliness argument can be debated. But this preemptive act by

---

9. Because of our disposition of this appeal, we do not address the merits of Maxatawny's contention that any action by Kutztown to enforce the Agreement would be time-barred under the parties' agreement. This will be an issue for the arbitrators. *See Lincoln Univ. of*

*The Cmwlth. Sys. of Higher Educ. v. Lincoln Univ. Chapter of The Am. Ass'n of Univ. Professors*, 467 Pa. 112, 354 A.2d 576 (1976); *Muhlenberg Twp. Sch. Dist. Auth. v. Pa. Fortunato Constr. Co.*, 460 Pa. 260, 333 A.2d 184 (1975).

Maxatawny to *enforce* the arbitration provision in the Agreement should not simultaneously also be construed as a waiver of the right to do so. *See Keystone Tech.,* 824 A.2d at 1226 (filing complaint in trial court, without more, does not constitute waiver of right to enforce arbitration clause).[10]

Maxatawny commenced its declaratory judgment action on December 27, 2013, for the sole purpose of enforcing the arbitration clause in the parties' Agreement. Maxatawny affected service of the Declaratory Judgment Complaint on Kutztown on January 2, 2014. (R.R. 1a.) Kutztown filed its Answer, New Matter, and Counterclaim on January 21, 2014, and served the same on Maxatawny on January 24, 2014. On February 7, 2014, Maxatawny filed its Preliminary Objections, seeking enforcement of the parties' agreement to arbitrate. (R.R. 1.) Maxatawny thus raised the issue of arbitration in its Declaratory Judgment Action *and* in its preliminary objections to Kutztown's counterclaim—all within a span of just six weeks. *See Keystone Tech.,* 824 A.2d at 1227 (finding no waiver where plaintiff filed motion to compel arbitration within six *weeks* of filing complaint). By raising the issue of arbitration in its preliminary objections, Maxatawny did exactly what the builder failed to do in *Goral.* Moreover, Maxatawny did not wait for an adverse ruling from the trial court before doing so. Indeed, the trial court did not issue any rulings during this six week period. Furthermore, Maxatawny most certainly did not wait until the eve of trial to assert arbitration. Accordingly, consideration of the first, fourth, and fifth *St. Clair S.D.* factors weigh against a finding that Maxatawny waived its right to enforce the parties' arbitration agreement.

Consideration of the remaining *St. Clair S.D.* factors also weighs against waiver. With respect to the second factor, it does not appear from the record that the parties engaged in any discovery during the six week period between the filing of the Declaratory Judgment Complaint and the filing of the preliminary objections to Kutztown's counterclaim. The only discovery that appears to have occurred in this case was initiated by Kutztown *after* Maxatawny had filed its preliminary objections to the counterclaim. As to the third factor, the docket entries in this case do not show that Maxatawny engaged in any pretrial motion practice before filing its preliminary objections to the Kutztown counterclaim, raising the parties' agreement to arbitrate. (R.R. 1a.)[11] Thus, unlike the developer in *O'Donnell,* Maxatawny did not engage in a "continuum of litigation" before raising the issue of arbitration.

For these reasons, we conclude that the trial court erred in overruling Maxataw-

**10.** We note, too, that in *Keystone Technology,* the complaint filed in the common pleas court actually sought a court ruling on the substantive merits of the parties' dispute in that case. Nonetheless, the Superior Court still held that Keystone did not waive its right to compel arbitration of that dispute.

**11.** As noted above, as part of its waiver analysis, the Pennsylvania Superior Court considers whether the party asserting waiver suffered any prejudice or whether the party against whom waiver is asserted gained any undue advantage. We believe that these questions are fairly subsumed within the five *St. Clair S.D.* factors. Nonetheless, Kutztown has not advanced any argument that would persuade us that it has been prejudiced by Maxatawny's conduct in this case or that Maxatawny has gained some undue advantage in its dispute with Kutztown as a result of its conduct in the common pleas court. Accordingly, were we to consider these questions independently, we would still conclude that Kutztown failed to meet its burden of proving waiver in this case.

ny's preliminary objections to the counter-claim, raising the issue of arbitration. We do not infer from Maxatawny's conduct in this case an intent by Maxatawny to waive its right to enforce the dispute resolution provision of the parties' Agreement. We therefore, reverse the trial court's Preliminary Objection Order. On remand, as it appears from the record that the parties and the trial court agree that the dispute over Maxatawny's withdrawal from the Agreement falls within the scope of the arbitration provision in the Agreement, the trial court shall direct the parties to arbitration and stay the action below.[12] To the extent Maxatawny wishes to contest the timeliness of Kutztown's demand for arbitration, it should do so in the arbitration proceeding.

### B. Appeal of the Stay Order

■ Maxatawny contends that the trial court erred in staying the arbitration proceeding initiated by Kutztown. We disagree. Because the trial court ruled that both parties had waived the right to enforce the arbitration provision of the Agreement, there was no agreement to arbitrate. The Uniform Arbitration Act expressly empowers a court "to stay an arbitration proceeding threatened or commenced ... on a showing that there is no agreement to arbitrate." 42 Pa.C.S. § 7304(b). That we have reversed the trial court's decision on waiver does not mean that it acted without authority when it issued the Stay Order. In light of our ruling on waiver, however, on remand the trial court should lift the stay consistent with our instructions that the parties proceed to arbitration.

### III. CONCLUSION

For the reasons set forth above, the Preliminary Objection Order entered by the trial court is reversed, and the Stay Order is affirmed. This matter is remanded to the trial court with instructions that it lift the stay of arbitration, direct the parties to proceed with arbitration, and stay the court proceeding pursuant to Section 7304(d) of the Uniform Arbitration Act.

### *ORDER*

AND NOW, this 10th day of April, 2015, the May 22, 2014 Order of the Court of Common Pleas of Berks County is AFFIRMED. The March 10, 2014 Order of the Court of Common Pleas of Berks County is REVERSED and this matter is REMANDED for further proceedings consistent with the accompanying opinion.

Jurisdiction relinquished.

DISSENTING OPINION BY President Judge DAN PELLEGRINI.

By filing an action to determine whether Kutztown Borough and Kutztown Municipal Authority (collectively, Kutztown) waived its arbitration rights, which is itself determined through the arbitration process, I agree with the trial court that Maxatawny Township and Maxatawny Township Municipal Authority (collectively, Maxatawny) submitted to and accepted the judicial process and therefore waived its right to compel arbitration. Accordingly, I respectfully dissent.

As the majority explains, the Inter-municipal Sanitary Sewage Service and Treatment Agreement (Agreement) into which

---

**12.** Maxatawny sought dismissal of Kutztown's counterclaim in its preliminary objections. Where, however, there is an agreement to arbitrate and a direction that the parties proceed to arbitration, the proper remedy is a stay of the court proceeding under Section 7304(d) of the Uniform Arbitration Act, 42 Pa.C.S. § 7304(d), and not dismissal. *Maleski v. Mutual Fire, Marine & Inland Ins. Co.*, 534 Pa. 575, 633 A.2d 1143, 1145 (1993).

Maxatawny and Kutztown entered obligated Maxatawny to construct a treatment facility to provide for the parties' future sewage needs and to convey it to the intermunicipal sewage treatment authority by December 31, 2013. Article X of the Agreement contains provisions governing arbitration:

Section 11.02. *Demand for Arbitration.* Arbitration shall be demanded within ninety (90) calendar days from the time when the demanding party, either by one of the Municipalities party to this Agreement or the [treatment authority], knows or should have known of the event or events giving rise to the claim. Failure to demand arbitration within this time limit shall forever foreclose the right of the demanding party to review its alleged claim.

Section 11.03. *Arbitration.* The parties recognize that this Section means that all claims shall be litigated and reviewed before a panel of arbitrators instead of before a court of law and/or a jury, because they desire the many benefits of the arbitration process over court proceedings, including the speed of the resolution, lower costs and fees, and more flexible rules of evidence.

Agreement art. X, §§ 11.02–11.03.

In October 2012, Maxatawny informed Kutztown that it could not comply with certain duties under the Agreement and therefore, that it intended to dissolve it. By letter dated November 30, 2012, Maxatawny confirmed its position, stating that it intended to withdraw from the Agreement and proposing general settlement terms. Over a year later, on December 10, 2013, Kutztown rejected Maxatawny's proposal, demanded compliance with the Agreement as written, and stated its intention to "enforce all of [the Agreement's] rights and remedies, at law, in equity and pursuant to other causes of action, to compel perform-ance of the Agreements." (Reproduced Record [R.R.] at 47a.)

In December 2013, Maxatawny filed suit against Kutztown in the Court of Common Pleas of Berks County (trial court), seeking a declaration that: (1) Kutztown waived its right to arbitration by failing to make a timely demand for arbitration as required under the Agreement; (2) the Agreement was terminated pursuant to the notice Maxatawny provided in November 2012; and (3) Maxatawny is not liable to Kutztown.

In response, Kutztown filed a counterclaim against Maxatawny, seeking a writ of mandamus directing Maxatawny to perform its obligations under the Agreement as well as specific performance, or alternatively, monetary damages, for Maxatawny's breach of the Agreement. Maxatawny then filed preliminary objections, contending that the trial court lacked jurisdiction over the dispute raised in the counterclaims because Kutztown had an adequate remedy at law insofar as the Agreement provided for mandatory arbitration.

The trial court overruled the preliminary objections in principal part, emphasizing that:

[Maxatawny] voluntarily entered into the Agreement and then initiated litigation against [Kutztown] after [Kutztown] performed [its] obligations under the Agreement. A party that avails itself of the judicial process by attempting to win favorable rulings from the judicial system following the filing of a complaint *does waive* [its] right to proceed through arbitration.... [Maxatawny has] initiated the legal process and [is] proceeding on [its] claim to its conclusion within the judicial process. This is evidenced further by [Maxatawny] filing preliminary objections seeking judicial determinations beyond just the disputed arbi-

tration provision(s). It is apparent [Maxatawny] ha[s] availed [itself] of the judicial process, which Pennsylvania case law tracks, and this conduct by [Maxatawny] does waive any right [it] may have had to proceed to arbitration.

(Trial Court's May 30, 2014 Opinion, at 5.)

The majority acknowledges that a party may waive enforcement of an agreement to arbitrate through its conduct. *See Moscatiello Construction Company v. Pittsburgh Water & Sewer Authority*, 167 Pa.Cmwlth. 508, 648 A.2d 1249, 1251 (1994), *appeal denied*, 540 Pa. 608, 655 A.2d 995 (1995). When, as here, a party to an agreement to arbitrate seeks to enjoin the other party from pursuing arbitration, "judicial inquiry is limited to two questions: (1) was an agreement to arbitrate entered into; and (2) does the dispute involved fall within the arbitration clause." *Lincoln University of Commonwealth System of Higher Education v. Lincoln University Chapter of American Association of University Professors*, 467 Pa. 112, 354 A.2d 576, 580 (1976).

In the instant matter, the parties do not dispute that they entered into the Agreement; rather, Maxatawny contends that Kutztown is time-barred from seeking arbitration. Generally, "the question of the timeliness of a demand for arbitration is not of interpretation of the agreement and not one of the existence or scope of the arbitration provision; it is thus outside the bounds of [a trial court's] review and its resolution must be left to arbitration." *Id.* at 582 n. 11 (internal quotation marks and citation omitted); *see also Muhlenberg Township School District Authority v. Pennsylvania Fortunato Construction Co.*, 460 Pa. 260, 333 A.2d 184, 186–87 (1975) (holding that the issue of whether a contractor's demand for arbitration was timely must be resolved by the arbitrators as it is a matter of interpretation of the agreement).

Although the issue of whether Kutztown waived its arbitration rights should have been submitted to arbitration, the trial court found that Maxatawny waived its right to compel arbitration to determine that question by initiating suit in the trial court. Indeed, it is well established that "[a] party engaged in litigation before a court may waive its right to have a dispute submitted to arbitration." *St. Clair Area School District Board of Education v. E.I. Associates*, 733 A.2d 677, 682 n. 6 (Pa. Cmwlth.1999). To this extent, I agree with the majority that a party's acceptance of the judicial process, and thus whether it has waived arbitration, should take into consideration whether the party: "(1) fails to raise the issue of arbitration promptly, (2) engages in discovery, (3) files pretrial motions which do not raise the issue of arbitration, (4) waits for adverse rulings on pretrial motions before asserting arbitration, or (5) waits until the case is ready for trial before asserting arbitration." *Id.*

However, these factors do not account for the rare situation in which a plaintiff seeks to compel arbitration after initiating a claim in the trial court. The United States District Court for the Eastern District of Pennsylvania addressed such an issue in *Pirito v. Penn Engineering World Holdings*, 833 F.Supp.2d 455 (E.D.Pa. 2011), and I find its analysis instructive and persuasive. In that case, the district court explained that the waiver "test was intended for situations where a party might have waived the right to arbitrate due to its acquiescence with the opposing party's litigation conduct, not for the exceptional case in which the party asserting the defense of arbitrability itself initiated the litigation by asserting arbitrable claims." *Id.* at 467. Finding that the claims the plaintiff asserted were encom-

passed by the agreement to arbitrate, the district court held that the plaintiff:

> waived the defense of arbitrability not by passive acquiescence—as we more commonly see . . .—but by his active choice of this forum. By submitting his arbitrable claim to this Court, he has waived the argument that this Court is an inappropriate forum for the resolution of such claims. In this context, the fact that [the plaintiff] did assert the affirmative defense of arbitrability in his answer to the [defendants'] counterclaims, *see* Pl.'s Ans. at 19, diminishes in importance.

*Id.* at 468.

Significantly, Maxatawny did not "passively acquiescence" but "actively chose its forum" when it filed its declaratory action in the trial court rather than proceeding to arbitration. It only asserted its arbitration objection to protect itself after Kutztown filed counterclaims. As was the case in *Pirito*, here, Maxatawny's active choice of forum weighs in favor of a finding of waiver. This factor is due far greater weight than the fact that Maxatawny filed preliminary objections raising the arbitration clause in response to Kutztown's counterclaims, particularly when those counterclaims arise from the same matter that Maxatawny chose to litigate in the trial court. Moreover, despite the trial court's ruling that Maxatawny waived its right to enforce the arbitration clause by filing its declaratory action, Maxatawny did not choose to withdraw its action, continuing to submit itself to jurisdiction of the trial court.

The majority holds that "the mere filing of a complaint or an answer in a court proceeding will not result in waiver of the right to compel arbitration" because "[t]he party asserting waiver must show prejudice to it or undue advantage gained by the other party." (Majority Opinion at 903.) In support of this position, the majority relies upon *O'Donnell v. Hovnanian Enterprises, Inc.*, 29 A.3d 1183 (Pa.Super.2011). However, in that case it was the defendant who sought to move the case to arbitration after proceeding in the judicial system for several years without objection. *O'Donnell* did not encompass the fact pattern where the party initiating the litigation in the trial court was fully aware of the arbitration clause but knowingly sought a court decision on an issue that was arbitrable.

The majority cites an earlier Superior Court case, *Kwalick v. Bosacco*, 329 Pa.Super. 235, 478 A.2d 50 (1984), a matter where the plaintiff sought to remove his case to arbitration after originally filing it in the trial court. In *Kwalick*, the court rejected the defendant's waiver argument, relying on two pre-*Pirito*, single-judge decisions issued by the United States District Court for the Eastern District of Pennsylvania which did not address the additional considerations advanced in *Pirito*. *See Nuclear Installation Services Co. v. Nuclear Services Corp.*, 468 F.Supp. 1187 (E.D.Pa.1979); *Vespe Contracting Co. v. Anvan Corp.*, 399 F.Supp. 516 (E.D.Pa. 1975). Because application of the *Pirito* factor is necessary and counsels in favor of a finding of waiver, I do not find this line of reasoning persuasive.

Further, because I would find that the trial court did not err in holding that Maxatawny waived its right to enforce arbitration, I would find that Kutztown's counterclaims are governed by the statute of limitations applicable to civil actions rather than by the time period applicable to demands for arbitration.

Accordingly, for the reasons discussed above, I would affirm the trial court's decision.