J-A15023-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ESTATE OF: BERNICE M. KANE, TRUST SETTLOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: LAUREN H. KANE | |
| Appellant | No. 1496 EDA 2020 |

Appeal from the Order Entered July 8, 2020
In the Court of Common Pleas of Montgomery County
Orphans' Court at No: 2018-x2354

BEFORE:  BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY STABILE, J.:                    **FILED OCTOBER 27, 2021**

Appellant, Lauren H. Kane ("Lauren"), appeals from the order entered on July 8, 2020 in the Orphans' Court Division of the Montgomery County Court of Common Pleas, denying her motion to compel arbitration and granting the motion of Appellee, PNC Bank, N.A. ("PNC Bank"), for an emergency stay of proceedings filed with the American Arbitration Association ("AAA").  Lauren argues the Orphans' Court erred when it determined, *inter alia*, that the arbitration clause in her mother's trust should not be enforced because Lauren failed to raise the clause by preliminary objection or in new matter and because she extensively availed herself of judicial proceedings prior to demanding arbitration.  Finding no abuse of discretion in the Orphans' Court's denial of the motion, we affirm.

At the heart of the case is "The Bernice M. Kane Revocable Living Trust," a revocable *inter vivos* trust ("the Trust") created on August 10, 2000 and

amended on February 14, 2003. Bernice's daughter, Lauren, is a successor individual co-trustee—along with PNC Bank—and is a contingent remainder beneficiary of the Trust. Further, Lauren is Bernice's agent pursuant to a durable power of attorney executed in 2012 and accepted on May 30, 2013.

The factual and procedural history of this case is extensive, tortuous, and complicated. As the Orphans' Court explained:

> The Trust provides for distribution of income and principal to [Bernice] as she may request from time to time [] in writing. Upon [Bernice's] death, the trustees shall distribute [Bernice's] tangible personal property to her son, Michael Scott Kane ("Michael"), and her daughter, Lauren [], to be divided between them equally[.] For the residue of the Trust, the remaining principal of the Trust estate shall be distributed pursuant to the power of appointment under will of [Bernice's] late husband, Joseph Kane (Decedent) or pursuant to the terms of the Residuary Trust. The terms of the Residuary Trust include, *inter alia*, (1) a provision that the Trustees shall hold the sum of $200,000 in a separate Special Needs Trust for [Bernice's] grandson, Jeffrey David Kane and (2) the Trustees shall distribute the then-remaining principal in two equal shares between [Michael and Lauren]. The Trust originally provided that [PNC Bank] would become the first successor Trustee of the Trust. *See* Trust, Article [SIXTEENTH]. Upon the death of [Bernice], [Michael and Lauren] shall become Co-Trustees of their individual trusts created by this Trust.
>
> As of September 20, 2013, [Bernice's] treating physician concluded that [Bernice] had experienced significant declines in mental function as a result of dementia and as a result [was] incapable of handling her financial affairs. When PNC Bank learned there were assets in the Revocable Trust to be administered, in accordance with the Trust provisions, it indicated willingness to serve as co-trustee to [Lauren]. PNC Bank confirmed its acceptance to serve as successor trustee to Wells Fargo Advisers by writing dated September 14, 2015. On or about October 2, 2015, [Lauren] wanted to be recognized as sole trustee of the Trust. As agent under power of attorney, [Lauren] filed a ["]Petition to Compel Wells Fargo Bank to Honor the Authority of the Pennsylvania Power of Attorney for Bernice M. Kane to Provide

Payment of Damages["] by its refusal to do so and acknowledge [Lauren] as *sole trustee* of the Trust. [Lauren] asserted that she had a unilateral[] right to have unfettered access to the Trust pursuant to the power of attorney, notwithstanding any language contained in the Trust.

The Trust clearly states that in the event of both [Bernice's] and her husband's incapacity or disability that PNC Bank shall become successor Trustee. On October 2, 2015, PNC Bank filed an answer to [Lauren's] petition disputing her authority to serve as sole trustee and her interpretation of the Trust. The court authorized discovery and ultimately [Lauren] filed a notice of appeal with the Superior Court of Pennsylvania concerning the court's discovery order. The Superior Court held that [Lauren] cannot act unilaterally to control trust assets by virtue of the Power of Attorney in a non-precedential decision. ***See*** [***Estate of Kane***, 2158 EDA 2016 (Pa. Super. filed April 24, 2017). The Supreme Court subsequently denied Lauren's *pro se* petition for allowance of appeal.]

By November 2017, the transfer of assets comprising the Trust from Wells Fargo Advisors to PNC and [Lauren] as co-trustees was completed. On June 26, 2018, PNC Bank filed a petition for citation to show cause why PNC Bank [] should not be reimbursed for expenses advanced for the trust pursuant to 20 Pa.C.S.A. §§ 7769 and 7779, and for assessment of counsel fees and costs against [Lauren], co-trustee pursuant to 20 Pa.C.S.A. § 7780.1 and for equitable relief. Within the petition, PNC Bank claimed that as a result of [Lauren's] litigious strategies against the express Trust provisions[,] PNC Bank was caused to incur unnecessary counsel fees and costs. [***See*** PNC Bank's Petition, 6/26/18, at 14-16.] Further, PNC Bank alleged that [Lauren] should be held liable for her waste of resources in the form of a surcharge for breach of her fiduciary duties to [Bernice] and the beneficiaries of the Trust. Thereafter, PNC Bank filed a petition for leave to resign as co-trustee of the Trust. [***See*** PNC Bank's Petition, 7/23/18.] In February 2019, [Lauren] filed a summons against her former attorney for malpractice. [] In this case, [Lauren] also has alleged that her former lawyer Phyllis Epstein of Epstein, Shapiro & Epstein, P.C. stemming out of the Epstein[ firm's] petition should be denied reimbursement for legal fees and

costs advanced in connection with this Trust. [**See** Lauren's Petition, 11/14/19.][1]

On January 31, 2020, this court held a status conference with all of the interested parties to identify the dispositive issues and determine a plan for scheduling hearings. At that time, the court determined the following were the dispositive issues: (1) appointing a successor trustee for PNC Bank, (2) PNC's June 2018 petition for fees, (3) [Lauren's] request for reimbursement for expenses and commissions, (4) [Lauren's] objections to the accounting of PNC Bank and (5) the Epstein matter. At this conference the parties all agreed with the outstanding issues and with the case management plan for proceeding, which included a trial schedule, as well as an attempt of the parties to agree upon a successor trustee.[FN] On February 25, 2020, the court issued a case management order scheduling a two-day trial, which had to be postponed due to Coronavirus. On May 29, 2020, the court issued a second case management order cancelling a two-day trial which was to be held on July 22 and July 23, 2020 due to Coronavirus. Thereafter, on June 17, 2020, [Lauren] filed her motion to compel arbitration based on an arbitration clause contained in the Trust. In response, PNC Bank filed a motion for emergency stay of judicial proceedings in which the Guardian ad Litem [appointed in relation to the special needs trust for Bernice's grandson, Jeffrey David Kane] joined. [Lauren] opposed the stay whereas the others opposed the motion to compel arbitration. On July 8, 2020, this court issued an order denying the motion to compel arbitration with prejudice, noting "[Lauren] waived arbitration clause contained in the Trust by failing to raise an agreement to arbitrate before availing herself extensively to the judicial process of this Honorable Court." **See** Order dated 7/8/2020. [Lauren] timely filed a notice of appeal and Pa.R.A.P. 1925(b) Statement.

_____

[1] By order entered August 9, 2021, we granted Epstein's application for leave to file post-submission communications, accepted for filing three orders issued by the trial court in the malpractice action, and made those orders, dated June 3, 2021, July 2, 2021, and July 6, 2021, respectively, part of the certified record in this appeal. The June 3, 2021 order reflects the trial court's dismissal without prejudice of Lauren's complaint against Epstein and her law firm. The July 2, 2021 order denies Lauren's motion for reconsideration. The July 6, 2021 order directs Lauren to file a Rule 1925(b) statement in the appeal filed from the June 3, 2021 order. That appeal is docketed at 1474 EDA 2021.

> [FN] An agreement could not be reached regarding a successor trustee. In a petition [filed] March 12, 2020, [Lauren] argued she has the right to unilaterally choose the successor trustee. The court was working to address this matter when the instant issue was raised.

Orphans' Court Opinion, 9/8/20, at 1-4 (some footnotes and capitalization omitted) (emphasis in original).

In her brief filed with this Court, Lauren asks us to consider the following:

> 1.(a) Can either co-trustee waive the revocable trust's arbitration provision, which provides that if they are unable to act unanimously, they "shall submit such issues to the American Arbitration Association, whose decision shall be binding"?
>
> 1.(b) Is the provision binding upon PNC, which has enjoyed the benefits of the trust while disavowing the mandatory arbitration provision?
>
> 1.(c) Is the provision "unconscionable?"
>
> 2. If the arbitration provision can be waived, did [Lauren] do so?

Appellant's Brief at 7.

We begin by setting forth our standard of review. In **_Setlock v. Pinebrook Pers. Care & Ret. Ctr._**, 56 A.3d 904 (Pa. Super. 2012), this Court stated:

> We review a trial court's denial of a motion to compel arbitration for an abuse of discretion and to determine whether the trial court's findings are supported by substantial evidence. In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. The first determination is whether a valid agreement to arbitrate exists. The second determination is whether the dispute is within the scope of the agreement.

> Whether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary. The scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally. These are questions of law and our review is plenary.
>
> Arbitration is a matter of contract, and parties to a contract cannot be compelled to arbitrate a given issue absent an agreement between them to arbitrate that issue. Even though it is now the policy of the law to favor settlement of disputes by arbitration and to promote the swift and orderly disposition of claims, **arbitration agreements are to be strictly construed and such agreements should not be extended by implication.**

*Id.* at 907-08 (citation omitted) (emphasis in original).

Both of Lauren's issues, including the subparts of her first issue, involve the issue of waiver. Therefore, we address the issues together in considering the Orphans' Court's conclusion that Lauren waived arbitration in this case.

As the above-quoted excerpt from the Orphans' Court's September 8, 2020 opinion reflects, PNC Bank's involvement in the Trust, as well as its disputes with Lauren relating to handling of the trust, date back to 2015. The Orphans' Court recognized:

> It is well-established under traditional Pennsylvania case law that an agreement to arbitrate can be waived if not raised by preliminary objection or as new matter in a responsive pleading. *See* Pa.R.C.P. 1030 (affirmative defenses, including arbitration and award, shall be pleaded in new matter); Pa.R.C.P. 1032 (with exceptions not relevant here, all defenses not presented by preliminary objection, answer or reply are waived); *Goral v. Fox Ridge, Inc.*, 683 A.2d 931, 933-44 (Pa. Super. 1996); *Teodori v. Penn Hills School Dist. Auth.*, 196 A.2d 306 (Pa. 1964) (pleadings contain no mention of arbitration defense, therefore, defense is waived); *Samuel J. Marranca General Contracting Co., Inc. v. Amerimar Cherry Hill Assoc. Ltd.*, 610 A.2d 499 (Pa. Super. 1992) (arbitration is an affirmative defense which

- 6 -

must be pleaded in new matter or waived); ***Kwalik v. Bosacco***, 478 A.2d 50 ([Pa. Super.] 1984). "A waiver of the right to proceed to arbitration may be expressly stated, or it may be inferred from 'a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary.'" ***Goral***[, 683 A.2d at 933 (quoting ***Marranca***, 610 A.2d at 501)]. If the pleadings are devoid of any mention of the defense of arbitration, then it may be deemed waived. ***Teodori***, 196 A.2d at 310. Moreover, the failure to timely raise agreement to arbitration can result in "exceeding unfairness to the opposing party." ***Zimmer v. CooperNeff Advisors, Inc.***, 523 F.3d 224, 232 (3d Cir. 2008). As a matter of public policy, our courts have also waived a party's right to arbitration where her conduct would gain her an undue advantage or result in prejudice to another party. ***See Kwalick***, 478 A.2d at 52.

Orphans' Court Opinion, 9/8/20, at 6-7.

The defense of arbitration was not raised by Lauren by preliminary objection or in new matter to the various pleadings filed in this case. Rather, it was raised for the first time in Lauren's motion to compel arbitration filed in June 2020, after the scheduled trial in this matter was cancelled for the second time due to COVID-19. In accordance with our procedural rules, "[a] party waives all defenses and objections which are not presented either by preliminary objection, answer or reply . . . ." Pa.R.C.P. 1032(a). Therefore, the Orphans' Court did not abuse its discretion in determining that Lauren waived arbitration by virtue of her failure to raise it as an affirmative defense or in new matter.

Even if not waived by virtue of Pa.R.C.P. 1032, Lauren also waived any right to arbitration by availing herself of the judicial process. In ***DiDonato v. Ski Shawnee, Inc.***, 242 A.3d 312 (Pa. Super. 2020), this Court reiterated:

"It is well-settled that although as a matter of public policy, our courts favor the settlement of disputes by arbitration, the right to enforce an arbitration clause can be waived." *O'Donnell v. Hovnanian Enterprises, Inc.*, 29 A.3d 1183, 1187 (Pa. Super. 2011). A party that avails itself of the judicial process by attempting to win favorable rulings from the judicial system following the filing of a complaint waives the right to proceed through arbitration. *Stanley-Laman Group, Ltd. v. Hyldahl*, 939 A.2d 378, 387 (Pa. Super. 2007).

When deciding whether a party accepted judicial process to constitute waiver of a claim to arbitration, courts assess whether the party: (1) failed to raise the issue of arbitration promptly; (2) engaged in discovery; (3) filed pretrial motions that do not raise the issue of arbitration; (4) waited for adverse rulings on pre-trial motions before asserting arbitration; *or* (5) waited until the case is ready for trial before asserting arbitration. *O'Donnell, supra*. Significantly, a party "cannot avail itself of the judicial process and then pursue an alternate route when it receives an adverse judgment. To allow litigants to pursue that course and thereby avoid the waiver doctrine and our rules of court is to advocate judicial inefficiency; this we are unwilling to do." *Samuel J. Marranca General Contracting Co. v. Amerimar Cherry Hill Associates*, 416 Pa. Super. 45, 610 A.2d 499, 502 (1992).

*Id.* at 318-19 (some internal citations omitted) (emphasis in original).

Here, Lauren argues her motion to compel was timely filed as soon as she advised her current counsel of the arbitration provision in the Trust. The Orphans' Court rejected her contention, noting that "[Lauren's] argument rings hollow and disingenuous. It cannot be understated that this motion was made just five days before the original trial date in this matter." Orphans' Court Opinion, 9/8/20, at 7. Further, "[t]he failure of [Lauren] and her counsel to recognize the AAA Arbitration clause in the main operative document sooner than the eve of trial is unreasonable and incredible." *Id.* at 8. Moreover:

By failing to raise arbitration promptly and availing herself extensively to the judicial process through preparation for trial, [Lauren] prejudiced other parties. Whether [Lauren] did not know the provision existed or she knew about the about the arbitration provision and failed to raise it is of no moment. [Lauren's] conduct suggests that she was biding her time using aggressive litigation strategies before she surprised the parties and the court with her motion to compel. She did not raise the arbitration clause earlier in a pre-trial pleading and expressed no intent to arbitrate prior. Her pattern of conduct suggests a conclusive acceptance of the judicial process and waiver of arbitration. Therefore, the court concluded [Lauren's] motion to compel arbitration was patently untimely and the movant had waived her right to seek arbitration under the Trust because she delayed until the moment of trial, caused a negative impact on trust resources, engaged in extensive litigation, and availed herself to the judicial process for rulings and discovery. Accordingly, the court did not err or abuse its discretion in denying the motion to compel arbitration.

*Id.* at 8 (footnote and some capitalization omitted). Weighing the ***O'Donnell***

factors, as restated in ***DiDonato***, the Orphans' Court concluded:

First [Lauren] failed to raise the issue of arbitration promptly (waited more than one year after litigation commenced). She did not file preliminary objections nor signal her intent to invoke the arbitration clause of the trust promptly. Second, [Lauren] participated in discovery. Third, she filed numerous pretrial motions and maintained an aggressive litigious posture, which included an appeal to the Superior Court. Fourth, she waited until adverse rulings on pretrial motions and the denial of her request to act as sole trustee before asserting arbitration. Finally, fifth, she waited until the case was ready for trial. Accordingly, the possibility of arbitration was waived by [Lauren's] conduct.

*Id.* at 9 (citations omitted).

Regardless of the waiver factors identified above, Lauren contends (1)

neither co-trustee can waive the Trust's arbitration provisions, which provide

that in the event the trustees are unable to act unanimously, they "***shall***

submit such issues to the American Arbitration Association, whose decision

shall be binding, (2) that the provision is binding upon PNC Bank, and (3) that the provision is not unconscionable." Appellant's Brief at 7 (emphasis added). She argues that neither she nor PNC Bank signed "a contract in which they '**agreed**' to arbitrate, so they cannot 'waive' that 'agreement.' Rather, [Bernice] authored a trust document that **directed** them to arbitrate" disputes before the AAA, whose decision would be final. *Id.* at 29 (emphasis in original). She claims the arbitration clause is enforceable "because PNC Bank, having availed itself of the benefits of the trust, cannot simultaneously disavow the mandatory AAA arbitration clause." *Id.* at 29-30. She asserts the clause is not unconscionable "because that defense applies to one-sided contracts, not to trusts." *Id.* at 30.

PNC Bank counters Lauren's arguments by examining the terms of the Trust itself, which provide in relevant part:

> In the event of a difference of opinion among the Trustees, the decision of a majority then shall prevail, but the dissenting or nonassenting Trustee(s) shall not be responsible for any action taken by or inaction of the majority pursuant to such a decision. If only two (2) Trustees are in office, they must act unanimously, except if a Trustee is not empowered to partake in a particular decision, in which case the remaining Trustee shall make such decision, which shall be considered unanimous, unless the unempowered Trustee disagrees. In the event the Trustees are **unable to act** unanimously for a period of fifteen (15) calendar days, they shall submit such issues to the American Arbitration Association, whose decision shall be binding.

PNC Bank's Brief at 26 (emphasis in original) (quoting Trust, Item SIXTEENTH, at ¶ C.8). As PNC Bank recognizes, the provision is not a standard agreement to arbitrate "any and all issues," but rather "pertains only to the situation in

- 10 -

which the trustees are deadlocked and unable to act" and, as such, "applies to trustees' disagreements over prospective acts necessary for the preservation and investment of trust property, the exercise of a power held by the trustees, or some other similar action to be taken in the future." *Id.* at 26-27. Therefore, the provision does not apply where, as here, there are "after-the-fact disputes about the propriety of a trustee's historic actions, particularly those that have already been raised in the context of the audit of a trustee's account, let alone to a beneficiary's attempts to invade the trust or surcharge the trustee for an alleged breach of fiduciary duty." *Id.* at 27. Further, the disputes at issue before the Orphans' Court "involve parties **other than** the trustees and include pleadings filed by those other parties, including Lauren, who herself initiated various filings in capacities other than that of a trustee." *Id.* (emphasis in original). As such, those claims are outside the scope of the Trust's arbitration provisions "because they do not involve an inability 'to act' on the part of the trustees." *Id.* Consequently, the disputes are not arbitrable and the Orphans' Court did not err in finding that contract principles apply.[2]

At the conclusion of its opinion, the Orphans' Court remarked:

---

[2] We acknowledge that PNC Bank argues, and the Orphans' Court determined, that PNC Bank did not sign the Trust document, and therefore never specifically agreed to arbitrate disputes. Appellee's Brief at 26-28; Orphans' Court Opinion, 9/28/20, at 9-10. In light of our disposition of Lauren's issues based on waiver and the language of Item SIXTEENTH of the Trust, we need not address the import, if any, of the lack of PNC Bank's signature to the Trust.

This case is ready for a trial and adjudication before an Orphans' Court judge on the issues identified by the court. The court's ruling is not intending to foreclose the trustees from choosing to arbitrate other disputes by mutual agreement, but as there is not such agreement as to the payment owed to PNC Bank, the withdrawal of PNC Bank, the appointment of a successor trustee, claims for legal fees of the Epstein Firm, and claims for reimbursement by [Lauren], which are the outstanding matters agreed to by all parties at the January 31, 2020 conference and established in a subsequent case management order. These matters currently before the court should proceed to trial as planned.

To be candid, this estate is a contentious matter with multiple attorneys. It would be easier for the court to agree to have this matter transferred to arbitration, but given the multitude of complex issues currently before this court, granting [Lauren's] petition to compel arbitration at this stage in litigation would not be equitable or just under the law or circumstances of this case.

Orphans' Court Opinion, 9/8/20, at 14 (footnote and some capitalization omitted).

We find that the court's findings are supported by substantial evidence and that the court did not abuse its discretion or commit error of law error in determining that the language in Bernice's Trust did not include an agreement between (or among) the parties to arbitrate. Further, even if the provision did bind the parties to arbitrate, Lauren failed to raise arbitration as an affirmative defense or in new matter and, as a result, waived arbitration. Moreover, she extensively availed herself of the judicial process, further supporting the court's conclusion she waived arbitration. Because the court did not abuse its discretion by denying Lauren's motion to compel, we shall not disturb its July 8, 2020 order.

Order affirmed.  Case remanded.  Jurisdiction relinquished.


*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*


*Date: 10/27/2021*